# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TERESA TOURVILLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | No. 4: 20 CV 719 DDN |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Teresa Tourville for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## BACKGROUND

Plaintiff Teresa Tourville was born on December 22, 1963. She filed her application for DIB on October 24, 2016, alleging a March 31, 2016 onset date. (Tr. 162.) She alleged disability due to cervical spinal stenosis - neck pain; low back pain; osteoarthritis in her hands; chronic severe headaches; limited range of motion (ROM) in her right arm and neck; numbness/tingling on her right side - face/neck/shoulder; swelling/numbness on her left side; pain/burning of her right shoulder blade to breast; swelling of her upper back/neck

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

upon activity; limited ROM and pain in her right hip; and arthritis in her lumbar spine. (Tr. 181.)

On December 6, 2018, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 15-26.) The Appeals Council denied review. (Tr. 1-6.) The ALJ's decision therefore became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## MEDICAL AND OTHER HISTORY

The following is plaintiff's medical and other history relevant to her appeal.

On September 22, 2015, plaintiff was seen at Mercy Services, Sullivan, for cervical neck pain and left arm numbness and tingling after having seen a chiropractor and 16 weeks of physical therapy (PT) with no relief. (Tr. 314-16.) An x-ray of her cervical spine revealed mild degenerative disc disease at C5-6 and C6-7. An October 19, 2015 MRI of the cervical spine revealed multilevel cervical spondylosis appearing greatest at C5-6 and C6-7. A nerve conduction study the same day was normal. (Tr. 327-28, 389.)

She was seen by Tammy Watz, nurse practitioner, on October 21, 2015, to discuss her MRI results. She complained of neck pain with radiation to the left arm with numbness and tingling. On exam there was pain in her cervical spine with motion. She had a grossly normal gait and was oriented times four with normal insight. She was started on diclofenac, a nonsteroidal anti-inflammatory drug (NSAID), and was referred to neurosurgery for further evaluation. (Tr. 311-13.)

On March 11, 2016, she saw Ms. Watz again for neck pain. Notes indicate she had visited a neurologist the day before who suggested she consult with pain management and ordered cervical traction through PT. Review of Systems (ROS) was positive for sleep disturbance, neck pain, and anxiety. Exam revealed normal gait with no abnormality upon inspection of the spine. Her anxiety, insomnia, and chronic sinusitis were symptomatic. She was referred to pain management and PT. (Tr. 305-06.)

On September 22, 2016, she was seen for sinusitis, allergic rhinitis, fatigue, and anxiety. She had a normal neck examination, gait, and psychiatric evaluation. On October

6, 2016, she requested x-rays of her sacrum and above because she was in a lot of pain. (Tr. 300-03.)

On October 13, 2016, she was seen for back pain after mowing the lawn a few weeks earlier. She had numbness and tingling down the left leg and reported minimal swelling in the left lower extremity. She was diagnosed with left lumbar radiculitis and unspecified arthralgia and prescribed a Medrol Dose Pack, a scheduled, tapering dose of methylprednisolone that is taken over six days to bring inflammation under control quickly. Lab work was ordered. (Tr. 298-300.)

On October 13, 2016 lumbar spine x-rays revealed moderate degenerative changes, worse since her exam. Disc space narrowing at L4-L5 and L2-L3 was also worse. There were endplate sclerotic changes and osteophytes worse with posterior osteophytes noted especially at L2-L3. There were mild facet degenerative changes. (Tr. 320.)

On October 18, 2016, plaintiff fell down some stairs and complained of more tingling and numbness in her left foot and bilateral elbow pain with left index finger swelling. (Tr. 428.)

On November 29, 2016, she was seen for neck pain for five days and pain down the right arm. She was taking over-the-counter ibuprofen and seeing a chiropractor without relief. Review of systems noted neck and back pain with severe muscle spasms in her thoracic area and radicular pain in her right lower extremity. On exam she was noted to be walking stiffly but had no abnormality upon inspection of the spine. (Tr. 552-55.) Thoracic spine x-rays revealed mild dextroscoliosis or spinal curvature to the right, and mild degenerative changes. (Tr. 745-46.)

A January 9, 2017 MRI of her lumbar spine revealed minimal retrolisthesis of L4 on L5 with only minimal central canal involvement. There was right foraminal disc herniation at L1-2. (Tr.747-48.)

On January 11, 2017, plaintiff saw Jason W. Hahn, M.D., pain management specialist. She complained of worsening neck and low back pain that radiates into the right trapezius to the shoulder with associated numbness/tingling in the left elbow to the first and

second digit. The pain was worse with prolonged positioning (not more than 10-20 minutes) and certain physical activities and was relieved with position change and rest. Her low back pain was worse with bending and prolonged driving. She was taking Mobic, Flexeril, and Gabapentin for pain. On examination, she had a stable gait and station, normal heel-to-toe walk, and no difficulty with ambulation. She had a full ROM in all extremities without pain, crepitus, contracture in the shoulders, elbows, wrists, hips, knees, and ankles. She had good ROM in both her cervical and lumbar spine and 5/5 strength and no instability in her extremities. She had no trigger points and an appropriate mood and affect. Dr. Hahn diagnosed foraminal stenosis (narrowing) of her cervical region, degenerative cervical disc disease, cervical spondylosis without myelopathy, and pain in the right sacroiliac joint. An epidural steroid injection was administered and a trial of Relafen, an NSAID used to treat osteoarthritis and rheumatoid arthritis, was prescribed. (Tr. 803-08.)

On March 2, 2017, plaintiff complained of left wrist pain after falling a few months earlier. She noticed a growth on her wrist for the past two weeks. Exam revealed a ganglion cyst over the lateral aspect of the left wrist. She was referred to a specialist for evaluation and treatment. Her cervical and lumbar radiculitis was symptomatic. Flexeril was stopped due to fatigue, and Zanaflex, another muscle relaxant, was started. She was to follow-up with pain management. She started Inderal, for headaches, and referred to pain management for follow up. She was counseled on lifestyle changes, including weight loss, exercise, and lowering her sodium intake. (Tr. 572-75.)

She underwent steroid epidural injections in the cervical spine on February 20 and May 15, 2017. On September 22, 2017, she saw Dr. Hahn for pain. She stated she had about 50% pain relief for a month following her injections. Her pain was worse with routine physical activity. She had pain in all directions with ROM in her cervical and lumbar spine, and she had tenderness to palpation diffusely in the cervical and lumbar spine. Trigger points were absent, but she had multiple symmetric tenderness to palpation throughout her body. Dr. Hahn suspected lumbar nerve root irritation with fibromyalgia as a concomitant

as a worsening factor. Lumbar injection was administered and Lyrica, used to treat nerve pain, was prescribed. (Tr. 844-45, 850.)

On September 26, 2017, plaintiff reported possible anxiety attacks with shortness of breath, rapid heart rate, and sweating, requiring her to lay down. She reported little interest or pleasure doing things; feeling down, depressed, or hopeless; difficulty falling or staying asleep; fatigue; poor appetite or overeating; feeling bad about herself; and difficulty concentrating. (Tr. 587, 604-05.)

On April 18, 2018, a cervical epidural steroid injection was administered by Dr. Hahn. (Tr. 872.)

On May 10, 2018, plaintiff saw Ms. Watz for increased anxiety and fatigue. She reported increased fatigue for the past year with night sweats, dry mouth, and vaginitis. She had sun sensitivity and was fatigued to the point that she had to cancel appointments. She asked to be checked for lupus. On exam she had normal ROM and was alert and oriented to person place and time. Bloodwork revealed positive ANA (antinuclear antibodies), suggesting the presence of an autoimmune disorder, and rheumatoid factor. She was referred to a rheumatologist. (Tr. 664-68, 721-22, 727.)

On June 6, 2018, plaintiff saw Sanjay Ghosh, M.D., Ph.D., a rheumatologist. Bloodwork showed seropositive rheumatoid arthritis of multiple joints. She complained of pain in the bilateral hands, left wrist, right elbow, and neck for many years. Pain was increased by exertion. She had morning stiffness for an hour and felt tired all the time. Review of systems was positive for fatigue, allergy, postnasal drip, inflammation, dry eyes, temple pain, dry mouth, easy bleeding, muscle pain, joint warmth, decreased ROM, joint redness, low back pain, mid back pain, joint pain and swelling, morning stiffness, and neck pain. She reported headaches, tingling, and numbness. Dr. Ghosh diagnosed inflammatory polyarthropathy, fibromyalgia, positive ANA, positive rheumatoid factor, and unspecified fatigue. She started on hydroxychloroquine, a disease-modifying anti-rheumatic drug (DMARD), and continued Savella, used to treat fibromyalgia. (Tr. 535, 540-44.)

Plaintiff saw Dr. Ghosh on July 7, 2018. She reported feeling swollen since the past week with increased pain. She had pain in her hands, ankles and right shoulder increased by exertion. Morning stiffness lasted an hour. On exam she had 1+ tenderness with trace swelling in the metacarpophalangeal and ankles and 1+ tenderness in the right shoulder. She was diagnosed with seropositive rheumatoid arthritis of multiple joints. She started methotrexate, a DMARD, and continued Tizanidine, a muscle relaxant. (Tr. 537-38.)

On July 24, 2018, she received a lumbar epidural steroid injection. Her diagnosis was lumbar stenosis with neurogenic claudication. (Tr. 874.)

On July 26, plaintiff saw Ms. Watz, reporting anxiety, mood swings, and excessive sleeping. She did not think her medications were working. She reported psychomotor agitation. On exam, she appeared anxious, had normal ROM, and no edema or tenderness. Her diagnoses were symptomatic sleep disturbance, generalized anxiety disorder, and tobacco use disorder. She was "strongly urged" to stop smoking. (Tr. 696-97.)

A July 26, 2018 chest x-ray revealed mild degenerative changes in the thoracic spine. (Tr. 699.)

On August 8, 2018, Dr. Ghosh completed a Medical Source Statement (MSS). He opined plaintiff could stand and walk less than two hours in an 8-hour day, rarely lift and carry ten pounds, occasionally lift and carry less than ten pounds, and never perform postural activities. She could perform gross and fine manipulation with the right hand 10% of the time during an 8-hour workday and could perform gross and fine manipulation with the left hand 5% during an 8-hour workday. Dr. Ghosh opined plaintiff could sit 20 minutes at one time, stand 15 minutes at one time, and needed a job that permitted shifting positions at will. She would need to walk around during the workday, take unscheduled breaks, and would be absent from work 4 or more days per month because of her impairments. Dr. Ghosh believed she would be off task 25% of a workday or more. (Tr. 764-68.)

Felipe Eljaiek, M.D., an internist, also completed an MSS on August 8, 2018. Dr. Eljaiek opined that plaintiff could stand and walk less than two hours in an 8-hour workday, rarely lift and carry ten pounds, and only occasionally lift and carry less than ten pounds.

She could never climb ladders, ropes or scaffolds, rarely stoop, and occasionally crouch and climb stairs. She could perform gross manipulation with the right hand 80%, and fine manipulation 90%, of an 8-hour workday. She could perform gross and fine manipulation with the left hand 25% of an 8-hour workday. Dr. Eljaiek opined she could sit 20-30 minutes at a time, stand 10 minutes at a time, and would need a job that allowed her to shift positions and have periods to walk around during the workday. She would be off task 25% or more of the workday and would miss work three days per month because of her impairments. (Tr. 770-73.)

### ALJ Hearing

On September 19, 2018, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 45-80.) She is a registered dental hygienist. She gave up dental hygiene and dental coaching in July 2015, because she could no longer work due to pain, including pain in her hands and headaches. She was recently diagnosed with rheumatoid arthritis. She was taking methotrexate and Plaquenil but had severe side effects and was taken off them. She takes Lyrica for cervical and lumbar stenosis with some improvement. She takes Propranolol for headaches. (Tr. 51-59.)

Her husband helps her with her hair because she cannot move her arms up that far. Her husband does all the household chores. Since December 2017 she has had extreme fatigue and some days sleeps most of the day. She cannot type on a computer due to pain in her lumbar and cervical spine. She has about eight doctor or PT appointments per month. (Tr. 60-71.)

Vocational Expert (VE) Anne Darnell also testified at the hearing. (Tr. 73-78.) The VE testified that plaintiff's past relevant work as a dental hygienist and dental consulting coach is classified as light and skilled. (Tr. 59.)

The ALJ asked the VE to assume a hypothetical individual with the same age, education, and work background as plaintiff. The individual was functionally limited to lifting 20 pounds on occasion and 10 pounds frequently. The person could stand and/or walk about six out of eight hours and could sit six out of eight with normal breaks. The

person should avoid climbing ladders, ropes, scaffolds, working unprotected dangerous heights and around unprotected dangerous machinery. The person could only occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. The person should avoid jobs that would expose them to whole-body vibration, such as operating heavy equipment, either off-road or on-road. The person would be limited to frequent, not repetitive, or constant use of the bilateral upper extremities for fine and gross manipulation. The person should avoid jobs that would expose them to concentrate exposure to noxious fumes, odors, dusts, and gases. The VE testified that such an individual could not perform plaintiff's past relevant work but could perform other work that exists in the national and local economies, including ticket seller, warehouse checker, and hand bander. (Tr. 73-75.)

## **GENERAL LEGAL PRINCIPLES**

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability insurance benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42

(1987) (describing five-step process); *Pate-Fires*, 564 F.3d at 942 (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the functional capacity (RFC) to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The plaintiff bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the plaintiff cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404. 1520(a)(4)(v).

## **DECISION OF ALJ**

On December 11, 2018, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 15-26.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since her March 31, 2016 alleged onset date. At Step Two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine; rheumatoid arthritis; and fibromyalgia. At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the Commissioner's list of presumptively disabling impairments, 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18-20.)

The ALJ found that plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. § 404.1567(b) except she cannot climb ladders, ropes, or scaffolds, work at unprotected dangerous heights or around unprotected dangerous machinery. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. She can perform frequent, not repetitive use of the bilateral upper extremities for fine and gross

manipulation. She must avoid exposure to whole body vibration and concentrated exposure to extreme cold and noxious fumes, odors, dusts, and gas. (Tr. 21-23.)

At Step Four, the ALJ found plaintiff was not able to perform her past relevant work. At Step Five, the ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a ticket seller, checker, and hand bander. Consequently, the ALJ found that plaintiff was not disabled prior to May 1, 2018 but became disabled on that date and has continued to be disabled through the date of the decision. (Tr. 23-26.)

## DISCUSSION

Plaintiff argues the ALJ erred (1) in failing to properly consider her subjective complaints of pain; (2) in failing to adopt the opinions of Drs. Gosh and Eljaiek; and (3) in determining her residual functional capacity.

### A. Subjective Complaints of Pain

Plaintiff argues that the ALJ did not properly consider her subjective complaints of pain. She argues that the fact that her treatments have been "conservative," as described by the ALJ, is not inconsistent with her allegations of pain and disability. In support she notes the treatment she has received is consistent with her subjective complaints, specifically, medications, injections, chiropractic and rheumatological treatment, as well as the fact that she has not refused any type of treatment that was offered to her. She notes her conditions, i.e., autoimmune disorders, are not the type that normally require surgery or other more invasive types of treatment. She notes the fact that she tried all treatment offered without lasting relief is not inconsistent with her subjective complaints of pain. She argues the fact that she did not require surgery or more invasive types of treatment is not inconsistent with her subjective complaints, and the ALJ failed to explain why the types of treatment she received were inconsistent with her subjective complaints.

She also argues her activities of daily living (ADLs) are also not inconsistent with her subjective complaints. She contends the ALJ failed to acknowledge or discuss the limitations plaintiff reported with her ADLs, as explained in her function report and during

her hearing, and that this part of her testimony was not discussed. She asserts that considering the record as a whole, her ADLs are not inconsistent with her subjective complaints and the decision failed to explain how they are. The Court disagrees.

Because RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Liner v. Colvin*, 815 F.3d 437, 438 (8th Cir. 2016). However, there is no requirement than an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Further, the Eighth Circuit has held that an RFC finding is supported by substantial evidence when the evidence of record reveals largely mild or normal findings. *Cf. Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (upholding ALJ's finding that plaintiff could perform light work based on largely mild or normal objective findings, even though the medical evidence was "silent" with regard to work-related restrictions).

Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints. Using the Polaski factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting Polaski factors must be considered before discounting subjective complaints). In addition to the claimant's prior work record, the Polaski factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322 ; see also 20 C.F.R. § 404.1529.

Here, the ALJ considered the Polaski factors. The adjudicator is "not required to discuss each Polaski factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). The ALJ considered the objective medical evidence and noted that it conflicted with claims of

disability. The ALJ noted the record evidence revealed mostly normal or mild clinical findings during the relevant period. Plaintiff's medical records showed normal physical examinations, including normal ROM in her cervical and lumbar spine, as well as in all four extremities without pain, crepitus, and contracture, as well as proper ambulation and unremarkable neurological and musculoskeletal examinations. Plaintiff's imaging did not reveal any severe abnormalities, and a nerve conduction study was normal. Her lumbar spine MRI showed changes at two levels, and her cervical spine MRI demonstrated mild findings. Thus, the ALJ correctly found that the objective medical evidence belied claims of disability. *See Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004) (claimant fails to show disabling pain when objective tests support only mild to moderate findings).

The regulations for pain evaluation stress that the ALJ should consider the type of treatment that the claimant receives when evaluating pain. *See* 20 C.F.R. § 404.1529. In doing so, the ALJ may consider conservative treatment when evaluating credibility. *See Gonzales v. Barnhart*, 465 F.3d 890, 892 (8th Cir. 2006). Plaintiff was treated with medications, chiropractic sessions, PT, steroid injections, and a brace. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (If claimant can control her impairment by treatment or medication, she fails to show disability). The record shows that plaintiff reported some improvement with her pain with conservative treatment. Thus, the ALJ correctly considered plaintiff's treatment history in the disability determination. (Tr. 22, 296-531, 545-763, 774-874.)

The ALJ also properly considered plaintiff's ADLs in finding that her statements regarding disability were not entirely consistent with the record. The ALJ noted that plaintiff prepared meals, performed household chores and yard work, and drove. (Tr. 20, 22, 202-203.) Plaintiff cared for her granddaughter by picking her up from school and driving her to dance practice and cared for pets by feeding, giving water, brushing, and letting them outside. (Tr. 201). Although plaintiff complained of pain and fatigue at times when engaging in some of these activities, her complaints do not negate the fact that these extensive activities support a finding that she could perform a range of light work. The fact

that plaintiff is capable of numerous activities supports the ALJ's finding that she could perform at least a reduced range of light work. (Tr. 20, 22, 201-206.) *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003) (supporting the ALJ's discounting of subjective pain complaints as not credible when the record as a whole, including medical record, did not support the complaints); *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (stating "we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence").

      **B.      Treating Sources Opinions**

Plaintiff next argues the ALJ failed to follow the law of this Circuit by rejecting the opinions of Drs. Gosh and Eljaiek without considering the regulatory factors and without adequate explanation. The Court disagrees.

The opinion of a treating physician controls if it is well supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence. *Prosch v. Astrue*, 201 F.3d 1010, 1012-13 (8th Cir. 2012) (mirroring language of 20 C.F.R. § 404.1527). The treating source's opinion is not inherently entitled to controlling weight, however. *Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

In assessing a medical opinion, an ALJ may consider factors including the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, supportability with relevant medical evidence, consistency between the opinion and the record as a whole, the physician's status as a specialist, and any other relevant factors brought to the attention of the ALJ. *See* 20 C.F.R. § 404.1527(c)(1)-(6); *Owns v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (holding that when a treating physician's opinion is not entitled to controlling weight, the ALJ must consider several factors when assessing the weight to give it). Although an ALJ is not required to discuss all the relevant factors in determining what weight to give a physician's opinion,

the ALJ must explain the weight given the opinion and give "good reasons" for doing so. *See* 20 C.F.R. § 404.1527(c)(2).

The ALJ gave good reasons here. Here, the ALJ gave "some" weight to Dr. Ghosh's opinion in his August 2018 MSS as it pertains to the disability period beginning May 1, 2018. (Tr. 23, 765-68.) The ALJ considered Dr. Ghosh's lack of a treatment relationship with plaintiff during the relevant period and discounted his opinion as an overestimation of plaintiff's limitations. (Tr. 23). The ALJ noted that Dr. Ghosh began treating plaintiff in June 2018, one month after the period at issue in this case. (Tr. 23, 543.) Dr. Ghosh noted that he had treated plaintiff "once a month beginning June 6, 2018." (Tr. 765.) There is no evidence that Dr. Ghosh's opinion related to the relevant period. *See Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998) (although evidence from outside the insured period can be used in helping to elucidate a medical condition during the time benefits might be rewarded, such evidence cannot serve as the only support for disability). As noted above, the record evidence prior to the May 1, 2018 date of disability demonstrated mostly normal or mild clinical findings. (Tr. 299, 303, 575, 598, 668, 803-04, 845-46.) Moreover, plaintiff's imaging studies did not reveal any severe abnormalities. (Tr. 22, 383-84, 388-89.) Plaintiff reported some improvement with conservative treatment and her treating providers did not restrict her work activity. (Tr. 54, 296-531, 545-763, 774-874.)

The ALJ gave "partial weight" to the opinion of Dr. Eljaiek in his August 2018 MSS. The ALJ credited and adopted Dr. Eljaiek's opinion that plaintiff should never climb stairs. However, the ALJ found that his extreme limitations about plaintiff's ability to sit, stand, walk, and lift, and be off tasks more than 25% of the time was inconsistent with the record evidence. As discussed above, the ALJ discussed Mercy treatment records, noting progressively normal clinical findings, normal to moderate imaging studies, and some improvement with conservative treatment. (Tr. 22, 299, 303, 383-84, 388-89, 575, 598, 668, 803-04, 841, 845-46, 850). Accordingly, the ALJ properly discounted Dr. Eljaiek's medical source statement.

Based on the above, the Court finds the ALJ gave adequate reason to discount the opinions of Drs. Ghosh and Eljaiek.

### C. Residual Functional Capacity

Plaintiff next argues the ALJ erred in determining her residual functional capacity. She argues the ALJ determined his own RFC without citing evidence that supports the main physical capabilities. She contends the ALJ failed to adopt the limitations provided by either of her two treating providers, both of whom gave similar limitations and whose opinions are consistent with each other. She asserts the ALJ failed to cite medical evidence to support a light RFC considering the degenerative disease of her cervical and lumbar spine as revealed in her MRI. She argues the RFC was not based on substantial evidence or the opinion of any medical provider. She contends the ALJ merely interpreted raw medical data, without explaining how the objective evidence translates into the light RFC. The Court disagrees.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish her RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC must only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

Because RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Liner v. Colvin*, 815 F.3d 437, 438 (8th Cir. 2016). However, there is no requirement than an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932

(8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Further, the Eighth Circuit has held that an RFC finding is supported by substantial evidence when the evidence of record reveals largely mild or normal findings. *Cf. Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (upholding ALJ's finding that plaintiff could perform light work based on largely mild or normal objective findings, even though the medical evidence was "silent" with respect to work-related restrictions).

Here, the ALJ determined that plaintiff had the RFC to perform "light" work, with various limitations. The ALJ cited plaintiff's imaging studies, clinical findings, treatment effectiveness, and ADLs as described above. The ALJ also cited and discussed the two treating source medical opinions. (Tr. 21-23.) Based on the above, the Court concludes substantial evidence supports the ALJ's finding.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


　　　　　　　　　　　　　/s/   David D. Noce            
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on July 13, 2021.